**In the Matter of SCIENTIFIC RE-SOURCES CORPORATION, Debtor.**

**No. 73–672.**

United States District Court, E. D. Pennsylvania.

March 17, 1975.

---

Leon S. Forman, Nathan B. Feinstein, Philadelphia, Pa., for debtor.

John S. Estey, Philadelphia, Pa., for receiver.

Nathan L. Posner, Philadelphia, Pa., for petitioners.

## OPINION

LUONGO, District Judge.

Before me are three Petitioners for Review of orders entered by the Bankruptcy Judge in proceedings involving the Debtor, Scientific Resources Corporation (SRC).

## BACKGROUND

In 1965, SRC acquired substantially all of the capital stock of Hilco Homes Corporation from Martin Cohen, Anita Cohen, Walter Drucker and Richard Drucker (hereinafter referred to as petitioners) for an agreed price of $896,-000. Eventually petitioners instituted suit to collect a substantial unpaid balance of the purchase price, and, on December 26, 1973, obtained a judgment [1]

---

1. The matter is presently on appeal to the Supreme Court of Pennsylvania.

in their favor in the Common Pleas Court of Philadelphia in the amount of $752,198.14, plus interest from April 1, 1968. Meanwhile, on October 12, 1973, SRC had filed a petition for arrangement with creditors under Chapter XI of the Bankruptcy Act. Upon application by counsel for the Debtor, I granted Debtor's request to remain in possession and to continue operating its business without the appointment of a receiver. The Chapter XI proceeding was thereafter referred to Bankruptcy Judge Emil F. Goldhaber. In due course, petitioners filed their proof of claim for an amount in excess of one million dollars, representing the amount of their judgment with interest to October 12, 1973.

The First Meeting of Creditors was held on November 15, 1973, and hearings were held on that date and on November 20, December 10, and December 14, 1973. Petitioners applied to me on December 13, 1973 for the appointment of a receiver, contending that the matters disclosed in the examinations of officers and former officers of the Debtor required such appointment. I referred the matter to Bankruptcy Judge Goldhaber to hear and decide since he had already heard a substantial amount of evidence in the case. On December 14, 1973, after hearing argument, the Bankruptcy Judge denied the application. On the same date, after having heard testimony filling more than 500 pages, the Bankruptcy Judge terminated the First Meeting of Creditors and scheduled a hearing on Confirmation of the Plan and objections thereto for December 18, 1973. The Plan of Arrangement provided generally for the conveyance of a large portion of SRC's assets to Rocky Mountain Industries, Inc. (RMI), in return for RMI securities which, when added to RMI securities already owned by SRC, were to be delivered to creditors of SRC in satisfaction of SRC's debts. The Asset Purchase Agreement between SRC and RMI was dated September 1, 1972, was executed in February 1973, and was approved by Debtor's shareholders in October 1973. That Agreement had been incorporated in an Exchange Offer filed under the Securities Act of 1933 in an effort to accomplish voluntarily that which was finally submitted as the Plan of Arrangement under Chapter XI. The Prospectus for the Exchange Offer was before the Bankruptcy Court as an exhibit attached to the Chapter XI petition.

At the hearing on Confirmation on December 18, 1973, a substantial majority of creditors in number and amount[2] accepted the Arrangement. On April 17, 1974, the Bankruptcy Judge filed his Opinion and Order dismissing Petitioners' Objections and Confirming the Arrangement.

Meanwhile in the period of time between the hearing on Confirmation of the Plan and the filing of the Opinion Confirming the Plan, petitioners had filed suit in the Court of Common Pleas of Philadelphia (March 18, 1974) against RMI seeking to set aside the Asset Purchase Agreement as a fraudulent conveyance. Upon petition of RMI, that action was removed to this Court (Civil Action No. 74-850, E.D.Pa.). On April 3, 1974, Debtor applied to the Bankruptcy Court for an order restraining petitioners' suit against RMI. The Bankruptcy Judge entered an Order on May 9, 1974 restraining petitioners from proceeding further in the suit against RMI.

Under attack here are:

(a) Order dated April 17, 1974 Confirming debtor's Plan of Arrangement;

(b) Order dated December 14, 1973 denying application for appointment of a receiver; and

(c) Order dated May 9, 1974 enjoining petitioners from prosecuting the suit against RMI.

All three Orders will be affirmed.

2. Class Two-20 of 23 creditors whose claims aggregated $4,004,187 out of $4,066,587 in proofs filed; Class Three-511 of 631 creditors whose claims aggregated $9,308,878 out of $11,115,230.

## DISCUSSION

The Supreme Court order promulgating the new Bankruptcy Rules provided that they were to become effective July 1, 1974 and "shall be applicable to proceedings then pending except to the extent that in the opinion of the court their application in a particular proceeding would not be feasible or would work injustice." There is no reason why the new rules should not be applied to these petitions. New Bankruptcy Rule 810, made applicable to Chapter XI proceedings by Bankruptcy Rule 11–62, provides for appeal (formerly called "Petition for Review") to the District Court as follows:

"Rule 810. Disposition of Appeal; Weight Accorded Referee's Findings

Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses."

The central thrust of petitioners' contentions throughout these proceedings is that SRC's Asset Purchase Agreement with RMI constituted a fraudulent transfer of assets. Petitioners argue further that over the years SRC's assets have been fraudulently transferred to its officers and former officers and that many millions of dollars of assets have been dissipated in a series of transactions involving self-dealing by former officers and directors.

A careful review of this lengthy record reveals that petitioners were afforded every opportunity to elicit evidence to support their charges of fraud and wrongdoing. All they succeeded in establishing, however, is that SRC has experienced a series of spectacularly unsuccessful and costly transactions. The Bankruptcy Judge made extensive findings detailing the history of these transactions and losses and, in some instances, the reasons for the losses. For example, in Finding No. 12, the Bankruptcy Judge noted that one source of SRC's losses was the operations of its subsidiary, Atlas Financial Corporation "which, for the fiscal year ending September 30, 1970, alone, suffered losses totalling over four and a half million dollars. These losses were due both to increased competition brought about by the entry of banking institutions into the field of home improvement financing, and the refusal of lenders to renew loans to AFC." The Bankruptcy Judge identified SRC's unsuccessful computer technology operations, which were eventually sold for nominal cash consideration and securities, as another source of substantial losses (Finding No. 14).

These Findings, and the others, are supported by adequate evidence and in turn support the Bankruptcy Judge's conclusion that he found no evidence of fraud in the various SRC transactions, and in particular his Finding (No. 37) that "the Asset Purchase Agreement shows no evidence of fraudulent dealings between the parties, reflects no overreaching on the part of either party, shows reasonable business judgments on the part of both parties, made in good faith and for fair consideration."

It would serve no purpose to detail the evidence supporting the Bankruptcy Judge's Findings. Counsel for debtor, in his brief, has gone to great pains to document the portions of the record supporting each of the Findings. Counsel for petitioners has made no comparable documentation of the portions of the record refuting the Findings. This failure is understandable since such evidence is lacking.

(a) *Order Confirming Debtor's Plan of Arrangement.*

The burden was on petitioners to prove the grounds alleged in their objections. Lodi Trust Co. v. Cohn, 108 F.2d 26 (3d Cir. 1939). Particularly where fraudulent conduct is alleged, and where credibility is therefore an impor-

tant factor, the Bankruptcy Judge's Findings must not be disturbed unless clearly erroneous. In the Matter of Imants Seperis, 454 F.2d 195, 196 (3d Cir. 1972).

The Bankruptcy Judge's conclusion that the requirements for confirmation of the plan of arrangement were satisfied is supported by the record. Section 366 of the Bankruptcy Act states in part:

"The court shall confirm an arrangement if satisfied that—

(1) the provisions of this chapter have been complied with;

(2) it is for the best interests of the creditors and is feasible;

(3) the debtor has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to the discharge of a bankrupt; and

(4) the proposal and its acceptance are in good faith and have not been made or procured by any means, promises, or acts forbidden by this title." 11 U.S.C. § 766.

Petitioners have failed to meet their burden of proving the allegations of their objections. While they argued that the plan of arrangement was actually a liquidation plan, there is substantial support for the Bankruptcy Judge's conclusion that this was not a liquidation plan. In fact, the prospectus and the testimony at the hearing on confirmation demonstrate that this plan provides the only hope for the debtor to establish itself as a successful company and to provide a return for the creditors.

■ Petitioners argue that this case should not have proceeded under Chapter XI of the Bankruptcy Act but that Chapter X is the appropriate means of rehabilitation. Section 328 of the Bankruptcy Act, 11 U.S.C. § 728 (replaced by Rule 11–15), requires a party in interest who objects to proceeding under Chapter XI to move for transfer of the proceedings to Chapter X. No such motion was made before the Bankruptcy Judge had properly concluded that the case satisfied the requirements for confirmation under § 366. The argument for transfer now comes too late.

(b) *Order denying application for appointment of Receiver.*

■ Turning now to the appeal from the denial of the application for appointment of a receiver, petitioners' primary argument is that the Bankruptcy Judge, in determining whether a receiver should be appointed, erroneously restricted his consideration to events occurring in the period between my October 12, 1973 order allowing the debtor to continue in possession and the date of application. However, a fair reading of the Bankruptcy Judge's order and opinion and his certificate to the petition for review indicates that he did consider evidence of conduct before the October 12 order, but concluded, within his discretion, that there was no reason to disturb my earlier order. His conclusion is amply supported in the record.

(c) *Order enjoining suit against Rocky Mountain Industries, Inc.*

As noted above, while the Chapter XI proceedings were going on in the bankruptcy court, petitioners instituted the suit against RMI to set aside, as a fraudulent conveyance, the Asset Purchase Agreement under which the debtor transferred most of its assets to RMI.

■■ The cause of action to recover a fraudulent conveyance vests solely in the trustee, receiver or debtor in possession. See Bankruptcy Act §§ 67(d), 70(e); 11 U.S.C. §§ 107(d), 110(e); 4A Collier on Bankruptcy (14th Ed.) ¶ 70.-92. If petitioners, as parties in interest, were concerned that the debtor in possession might not diligently pursue the claim because the debtor was itself a party to the alleged fraudulent conveyance, their recourse was to seek the intervention of the bankruptcy court. Petitioners did so here by moving for the

appointment of a receiver, but since the Bankruptcy Judge had already reasonably concluded from the evidence produced before him that there was no fraud in the transaction, it was proper for him to enjoin petitioners from proceeding further with their separate action.

The Bankruptcy Judge's orders will be affirmed.